# N. Y. SUPERIOR COURT.

## Rufus W. Leavitt and another agt. Charles H. Dabney and others.

Our courts have no power nor authority over *foreign governments* nor over their *property*; notwithstanding such property is within *our territorial limits.*

Consequently, where funds of a foreign government are in the hands of its agents residing here, for the alleged purpose of being paid to creditors of that government who also reside here, the court here, being without jurisdiction over the principal—the foreign government, has no jurisdiction over its agents here. And being without jurisdiction over the parties, it cannot proceed *in rem* to dispose of its property in favor of resident creditors.

*Special Term, March,* 1868.

Motion to continue an injunction.

In July, 1866, the Peruvian and Chilian governments issued conjointly, their bonds of five hundred and a thousand dollars each, amounting in the aggregate, as alleged, to two million two hundred thousand dollars. The bonds state that the governments of Peru and Chili had authorized the minister Plenipotentiary of Peru and the charge d'Affairs of Chili, accredited to the government of the United States, to raise funds and to issue bonds to represent the amounts raised. The bonds then declared that said governments of Peru and Chili were indebted to the bearer in the sum of five hundred dollars (or one thousand dollars) in American gold. Interest-coupons were attached, payable on the first day of January and July. They were made payable upon the following, among other conditions, namely: "That the bonds will be countersigned by Messrs Dabney, Morgan & Co., financial agents of the governments of Chili and Peru, at whose office the service of this debt will be performed." "The financial agents shall keep a register of the bonds actually issued, subject at all times to the inspection of the bondholders."

After providing for the mode of payment, the bonds state, that " in addition to the public faith pledged by the Republics of Peru and Chili and the general hypothecation of all national incomes to the security and service of this debt, the government of Peru hypothecates specially and exclusively to the payment of its interest and redemption, five hundred thousand tons of Peruvian guano from the deposits of the Chincha Islands, and gives to each holder of these bonds and their legal representatives, the right to take possession of said guano, and export it in the quantity required at the price of twenty-five dollars in gold per ton, on the failure of the above-mentioned governments to pay the interest or effect the redemption of the bonds, or any part thereof, in the manner hereinbefore provided." The bonds were signed " F. S. Barreda," with the seal of Peru, and "F. S. Baruaga," with the seal of Chili, and countersigned "Dabney, Morgan & Co., financial agents."

It was alleged by the plaintiffs that they were owners and holders of four hundred and sixty-four of such bonds, for one thousand dollars each, and of seventy-two of such bonds, for five hundred dollars each. That previous to their making the loans upon such bonds and in view thereof, they were assured by the defendants that the bonds were valid and properly issued, and a good security. Six months interest, it was alleged, would become due on the first day of January, 1868, and the plaintiffs allege that the defendants had in their hands the amount in gold sufficient to pay such interest, having received the same for that purpose from the republics of Chili and Peru, as financial agents thereof, and that the same was held by the defendants expressly for that purpose. It was further alleged that the defendants had informed the plaintiffs that they would not pay such interest falling due on the first day of January, 1868.

The relief demanded, was that the defendants be restrained from parting with such money received by them for the payment of such interest; that a receiver be appointed, and that

the money in the hands of the defendants be applied to the payment of such interest.

The suit was commenced on the 31st of December, 1867, and before the interest became due, and the right to an injunction was claimed on the ground of the defendants' announcement that they would not pay the interest falling due on the first day of the succeeding January.

Upon these facts a preliminary injunction was granted.

The motion now is, to continue the injunction pending the action.

Upon the motion, the deposition of Mr. Morgan, one of the defendants, was read. He stated among other things, that on the twenty-third of December, 1867, the defendants received notice from the Peruvian minister, not to pay the interest-coupons falling due on the first of January, 1868, on the ground, that the bonds held by the plaintiffs, had been unlawfully issued; that they had been deposited in Mr. Williams' hands, who, contrary to instructions and agreement, had misappropriated or misapplied them, and had no authority to part with them. He further stated, that the money in their hands, was the money of the Peruvian government.

H. A. CRAM, *for plaintiffs.*
C. TRACY, *for defendants.*

MONELL, J. No claim is made against the defendants in this case, founded upon any representation alleged to have been made by them in respect to the validity or value of the bonds. If any such claim was made, the representations stated to have been made by the defendants would, I think, fall far short of being sufficient to sustain a cause of action. They were merely expressive of an opinion of and a belief in the validity and value of the bonds, and contain no evidences of and fraudulent purpose on the part of the defendants.

Nor is there any question properly involved, in respect to the *bona fide* ownership of the bonds by the plaintiffs. .For the purposes of the action, and upon the proofs before me, it appears that they made advances upon the security of the bonds, which were of the genuine issue of the Peruvian and Chilian governments, without any notice that they had been, as is now alleged, misappropriated or misapplied by some functionary or agent of those governments. Having received the bonds under such circumstances, it is not probable that the mere wrongful putting in circulation of genuine bonds payable to bearer, and transferable by delivering, by an agent of the obligors, having them in his custody would invalidate the title of a purchaser for value and without notice. This is upon the principle applicable to the diversion of notes or the wrongful issue of stock. (*Merchants' Bank* agt. *N. Y. & N. H. R. R. Co.*, 13 *N. Y. R.*, 599, 611), and is carried much further in respect to stolen bonds of a similar character.

Nor do I conceive that any inquiry into the sufficiency or insufficiency of the reasons assigned by the defendants for the non-payment of the January interest, is legitimately involved in the motion now before me. I am bound perhaps, to assume that such reasons were in fact sufficient, or were at least regarded as sufficient, by the Peruvian and Chilian governments, to authorize their withholding payment. At any rate, the defendants, the agents of, and acting under instructions from those governments would violate their trust and duty, if they disregarded or disobeyed such instructions; and they had no right either in respect to the interests of creditors or otherwise, to inquire into or question the sufficiency or propriety of the reasons assigned by their principals, or any direction they might see fit to make respecting the agency; nor indeed to require any reasons whatever.

The sole question then is, have the plaintiffs stated facts which in their legal effect, are sufficient to authorize the in-

terference by a court of equity, to compel the payment of
money in the hands of an agent of a foreign government, to
creditors of such government.

No action can be sustained by these plaintiffs against the
Peruvian and Chilian governments. Our courts have no
jurisdiction over foreign powers, and disputes or claims aris-
ing between or in favor of our own government or the citi-
zens of our government and a foreign power can be settled
only by treaty or by war.

Nor am I aware of any law under which the moneys in
the defendants' hands can be impounded or attached at the
suit of a creditor; or can in any other way be reached or
applied to the payment of debts existing here against their
foreign principals; and it is therefore probable, that the
plaintiffs are without remedy, beyond such as is provided in
the bond, or such as they may induce the government of
the United States to resort to in their behalf. The only
jurisdiction which by any pretense a court of equity could
exercise in a case like this, is in exerting its restraining
power to prevent, pending the litigation, a disposition of
the fund provided for the payment of interest, which might
deprive the plaintiffs of the benefit of such judgment as
they might obtain. So far as any other relief is concerned,
the remedies at law, would, if the plaintiffs have any remedy,
be quite adequate.

But courts of equity, while they recognize and protect
rights and redress wrongs, their jurisdiction over these sub-
jects is confined to such rights or wrongs only, as are ex-
clusively and exactly distinguished from that portion of
remedial justice which is exclusively administered by courts
of common law. And while courts of equity administer
remedies for rights which are not recognized by courts of
common law, the foundation which sustains the jurisdiction
of either court is the same; and the cause of action must
be such that the court can take hold of it and apply appro-
ate remedies and give appropriate redress.

Leavitt agt. Dabney.

There is no principle of equity which will sanction its assuming jurisdiction merely because at law there is no remedy, unless the facts are such as make up a case exclusively for equitable relief. In other words, there must be a cause of action, whether resort is had to the one forum or the other.

In this case it seems quite clear that the plaintiffs have not made out a claim for the equitable relief they seek to obtain. As before remarked, our courts have no power over the foreign principals, under whose authority and control the defendants can alone rightfully act. And being without jurisdiction over the parties, we cannot assert an authority over the property of such parties, notwithstanding such property is within our territorial limits. The fund in question, is the property of the Peruvian or Chilian governments, and not the property of the defendants, and there is no proceeding *in rem.* unless in actions over whose parties we have acquired or can acquire jurisdiction.

I cannot therefore discover any ground upon which this action can stand. I have endeavored to find some anology in principle applicable to equitable assignments or equitable liens, but without success. The plaintiffs cannot reach the fund because they cannot reach its owners. It is a misfortune, it may be a wrong, but our courts are without power, and the plaintiffs must be left to pursue such other course as may be open to them. If this act of repudiation is without justifiable reason, it should perhaps be (if not a *causus belli*), the subject of diplomatic negotiation between these foreign powers and the government of the United States.

The injunction must be dissolved with the usual motion costs.